*EVERETT, WALL & CO. v. J. H. WILLIAMSON, Trustee.

*Appeal—Exceptions—Judge's Charge—Issues—Lease.*

1. When an exception to evidence is so vague as not to point out the nature of the error complained of, it will not be considered. *Allred* v. *Burns*, 106 N. C., 247, approved.

2. An exception for "misdirection in the charge," without specifying any particulars, is too general. *McKinnon* v. *Morrison*, 104 N. C., 354, cited and approved.

3. When there is a motion for a new trial below for a refusal to give instructions asked, this is sufficient assignment of error. *Taylor* v. *Plummer*, 105 N. C., 56, cited and distinguished.

4. A prayer for instruction need not be given in the very words asked, if charged in substance.

―――――

* Head-notes by CLARK, J.

5. When the surrender of a lease, before its expiration, is unconditionally accepted by the lessor, without any reservation, he has no claim against the lessee for damages by reason of the diminished rent paid thereafter by the new lessee.

6. The frame of the issues is largely left to the discretion of the presiding Judge, if they are such as arise upon the pleadings. *Emery* v. *Railroad*, 102 N. C., 209.

This was an action for claim and delivery, tried before *Shipp, J.,* at September Term, 1889, of RICHMOND Superior Court.

The plaintiffs and defendant both claimed the property in dispute under one Travis Quick, who, it is admitted, was the owner of it.

The plaintiffs claim the crop and the live-stock sued for under an agricultural lien and chattel mortgage combined, dated 1st January, 1885, and they claim the engine, &c., under chattel mortgage and conditional sale made in 1881.

The defendant claimed the crop and live-stock and engine all under the stipulations of a lease, dated 6th October, 1883, the conditions of which defendant alleged had been broken. The plaintiffs seized the property under claim and delivery, and they sold the same and held the proceeds of sale at time of trial. It was admitted that the property brought a fair price, and there was no issue and no contention as to its value.

The plaintiffs introduced liens and chattel mortgages made by Travis Quick, due the 1st of January, 1885; also chattel mortgage executed by the said Quick to Leak, Everett & Co., dated August 27, 1881.

A witness, Everett, one of the plaintiffs, testified as to the partnership of Everett, Wall & Co. Objection was made to effect of chattel mortgage. Overruled. Everett testified that there was $3,009.21 due on the mortgages and crop liens introduced, etc.

Defendant introduced a paper purporting to be a lease and mortgage of the personal property of his tenant, as alleged,

Travis Quick.   There was no dispute as to the execution of this paper.

Defendant Williamson was examined as a witness for himself.   He testified that he lived in Alabama in the fall of 1885.   In that time he received letters from Travis Quick, saying that he could not carry out his lease.   He came out from Alabama in January, 1886.   Quick said he could not carry out his contract, and wanted to surrender everything—property and all things conveyed—everything.   Witness objected to giving up the lease.   Quick had not paid the annuity mentioned in the contract of lease; he had paid the rents for the two years 1884 and 1885; that he claimed that injury had been done to the land, or that the ditches had been neglected—hillside ditches; that there was a claim for inferiority, or the want of proper grades; amount could not be determined; something due on transportation, etc.; that Quick surrendered all the property, and he took it as compensation for breaches of covenant in the lease; that Quick paid him thirty-five bales of cotton in 1884, and the same in 1885; that he had not paid amount due on the lease, and owed him $105, balance due, according to terms of lease; that after Quick gave up the property and premises he tried to rent the land and could not get more than twenty-five bales of cotton per annum; leased for the year 1886 to John Broach for twenty-five bales; at the end of the year leased again to Broach for two years, at twenty bales per annum; Broach was to build some houses and pay taxes; he could not lease the property for more than twenty bales of cotton; that he told the Sheriff that he would surrender all but the eight mules, which he (Quick) had when the lease was made; that he did not get a letter from Everett in reference to this matter in the fall of 1885; Quick turned over the property to him on the 19th of January, or perhaps the 18th.   He may have said something to him about surrendering the

lease on the streets of Rockingham. The property was turned over on that day and the suit began on the next.

Broach, a witness, testified that he was a son-in-law of Quick's. Williamson called him across the street in Rockingham, where he and Quick were, and also Terry. He said that "he had called me over to witness that old man Quick had given up."

He further testified that the ditches were not kept open; that the hillsides were so steep that the ditches would have caused more washing, etc., than if the same had not been made. There were two places cultivated, and the cotton was ginned at the same machine

There were objections to the evidence in reference to this matter. Overruled.

The plaintiff, at this point, asked leave to amend the complaint. This was objected to, but allowed, upon terms, all of which was made a part of the record.

The plaintiff then introduced Quick, who testified that he cultivated both places in 1885, twelve horses on the Mary Hall place, and fifteen on Williamson's place; cotton seed mixed; Sheriff seized cotton on both places; mules were same as those mortgaged to plaintiff; bought an engine in 1881; was to be Everett's until paid for; that he had paid all the rents for the two years, but had not paid the annuity of 1885; property had not gone down in 1884 and 1885; he turned it all over because defendant said he was going to hold under older papers; the Williamson place was in better condition in 1886 than 1883. Witness said that they might fight it out; he would have nothing more to do with it, he could not pay the rent; cultivated two places.

Everett, recalled, stated that he had written letters to Williamson, while in Alabama, in reference to this matter; that he had a conversation with Williamson; that, as he understood, he made no claim to the property. Cynthia Cole died in 1887. There was other evidence as to the damage to the land.

Williamson and Quick each swore that the annuity, so-called, had not been paid to annuitant Miss Cole; not paid by Quick, nor by Williamson.

The Deputy Sheriff was examined, and said he seized the property under process in his hands, and that it was sold and brought a fair price. His seizure was on the 19th of January, 1886; while he had charge of the property he gathered some cotton from the Hall place; all carried to Williamson's gin and cotton ginned together.

The plaintiffs and defendant each tendered issues.

The Court, after hearing the parties, adopted those suggested by the plaintiff, which were as follows (the responses of the jury being added):

1. Are the plaintiffs entitled to the possession of the property described in the. complaint, or any part thereof? Answer—Yes.

2 Did defendant unlawfully withhold possession of said property, or any part thereof? Answer—Yes.

3. Did Travis Quick comply with the covenants and stipulations contained in the lease and made by him to J. H. Williamson, trustee, during the continuance of the lease? Answer—Yes.

4. What damage, if any, did defendant sustain by reason of said breach? Answer—Nothing.

5. What amount of rent, if any, was due defendant by·T. Quick at end of lease? Answer—No amount.

Defendant excepted to these issues and tendered others, four in number.

1. Is the plaintiff owner of the proper·y described, and entitled to possession?

2 Did the defendant wrongfully withhold the same?

3. What damage has plaintiff sustained by the wrongful withholding the ·property, etc?

4. Value of the property.

There was no dispute as to the value of the property. The plaintiff requested specific instructions to the jury.

Defendant requested the following:

1. There is no evidence that Williamson procured the abandonment by Quick of the lease, or in any way caused him to fail to perform any condition of the lease.

2. That if Quick did not pay the annuity stipulated in the lease, then the jury will find third issue, No.

3 That if they believe Quick, that he did not pay annuity for 1885, they will answer third issue, No.

4. That if they believe the evidence, they will answer fifth issue, forty-five bales of cotton weighing five hundred pounds.

5. If they believe the whole they will answer the third issue, No.

6. That if they believe the evidence, they will find, as damages the defendant sustained, at least the value of fifteen bales per annum for the three years of lease unperformed by Quick and the unpaid annuity of $48.

The Court charged the jury, in substance, as follows:

The testimony was recapitulated. The lease under which the defendant claimed was carefully read to the jury, and their attention called to the breaches assigned by the defendant under which he claimed the property. They were told that, so far as the annuity due to Miss Cole, there was only the testimony of Williamson and Quick, each of whom said that the annuity due in 1885 had not been paid by either of them. Their attention was called to the facts generally, and, specially, that, if the covenants in the lease had been violated, the defendant had a right to retain the property in controversy.

The Court further told the jury that there was evidence tending to show that the lease made by Quick had been surrendered to the defendant and had been accepted; that they must judge from all the evidence whether or not such was the fact; that counsel had debated the matter fully.

The Court further told the jury that if the conditions of

107—14

the lease had been performed by Quick, and that if the lease had been surrendered with the understanding that it should be cancelled, then the claim of the defendant could not be sustained, and that such a surrender and acceptance would end the matter, or equivalent words.

The jury returned a verdict as above. Motion for new trial for refusal and misdirection.

Motion overruled. Judgment in favor of plaintiff. Appeal by defendant.

*Messrs. J. D. Shaw* and *C. W. Tillett* (by brief) for plaintiffs.
*Mr. J. A. Lockhart,* for defendant.

CLARK, J.: The defendant excepted to the issues adopted by the Court, and to the refusal to submit those tendered by himself. We think the issues submitted by the Court were proper and better adapted to settle the controverted matters of fact raised by the pleadings. The Court certainly did not exceed the discretion allowed in framing issues. *Emery* v. *Railroad,* 102 N. C., 209.

It appears, in the statement of the case, that two objections were made to the evidence and overruled. But it is not clear by whom the objections were made, and they are so stated that it is impossible to see the nature or purport of the objections. *Allred* v. *Burns,* 106 N. C., 247. Besides, the party objecting seem to have acquiesced in the action of the Court, as no exception was taken to the overruling of the objections, as required by *The Code,* § 412 (2).

The defendant, after verdict, moved for a new trial for refusal to give certain instructions asked for by him, and for misdirection, which motion the Court refused. The exception to the charge in this wholesale manner, for "misdirection," without indicating in what particulars, is insufficient to point out to the Judge what should be sent up, or to put the appellee on notice of the points to be argued in this Court It is, therefore, too general to be considered.

*McKinnon* v. *Morrison,* 104 N. C., 354.   It is otherwise as to
the refusal to give the specific instructions asked.   This
case differs from *Taylor* v. *Plummer,* 105 N. C., 56.   There,
though appellant's prayers for instructions were refused,
there was "nothing to show that the appellant was dissatis-
fied with anything that occurred on the trial beyond the
fact that he appealed"—neither exceptions to the refusal to
grant the prayers for instructions, nor assignment of error
therefor.   Here, the appellant moved for a new trial, and
assigned as error for which it should be granted, the refusal
to give the instructions which had been asked by him.   This
was sufficiently specific to cause everything bearing on those
points to be included in the case on appeal, and was fair
notice to the appellee that the right of the appellant to have
the instructions granted would be insisted on in this Court.

The defendant requested the Court to charge as follows:

1. That there is no evidence that Williamson procured
the abandonment by Quick of the lease, or in any way
caused him to fail to perform any condition of the lease.

This was immaterial, and ought not to have been given.
It was not pertinent to any issue.   The question at issue was
not whether Williamson had "*procured* the abandonment,"
or "caused him to fail," but did Quick surrender up the
lease to be cancelled, and was the same accepted by Wil-
liamson?   That was the question, and the defendant did
not ask the Court to charge the jury that there was no evi-
dence of this, and did not except to the charge of the Court,
as given, on this point.   Indeed, there was evidence to show
the surrender and cancellation of the lease, and the verdict,
in effect, finds that the defendant cancelled and surrendered
the lease, as contended by the plaintiff.

The third issue was, "Did Travis Quick comply with the
covenants and stipulations contained in the lease made by
him to J. H. Williamson. trustee, during the continuance of
the lease?"   To which the jury responded, "Yes."

The defendant's 2d, 3d and 5th prayers were—

2. That if Quick did not pay the annuity stipulated in the lease, then the jury will find third issue, No.

3. That if they believe Quick, that he did not pay annuity for 1885, they will answer third issue, No.

5. That if they believe the whole, they will answer third issue, No.

In this connection, His Honor charged the jury as follows:

".They were told that, so far as the annuity due to Miss Cole, there was only the testimony of Williamson and Quick, each of whom said that the annuity due in 1885 had not been paid by either of them. Their attention was called to the facts generally, and, specially, that if the covenants in the lease had been violated, the defendant had a right to retain the property in controversy." This was a substantial compliance with the prayer. It would seem that upon this charge the jury might have well found in response to the third issue, that the stipulations of the lease had not been complied with, at least to the extent of the $48 due on the annuity for the year 1885. That the jury did not so find when thus instructed, was ground to move the Court below for a new trial, in its discretion, but is not sufficient to justify an exception for not giving an instruction which the Court, in substance, gave, though not in the identical words asked. Moreover, it must be noted that Quick testified that the land was in an improved condition when he gave it up, and Everett testified that Williamson, at that time, made no claim to the property. It may be, therefore, that upon the whole evidence the jury found that the surrender and cancellation of the lease between Quick and Williamson were absolute and unconditional, including a release of the $48 annuity due for 1885."

The other prayers were—

"4. That if they believed the evidence, they will answer fifth issue, forty-five bales of cotton weighing five hundred pounds.

"6. That if they believe the evidence, they will find, as damages the defendant sustained, at least the value of the fifteen bales *per annum* for the three years of lease unperformed by Quick, and the unpaid annuity of $48."

The fifth issue was, "What amount, if any, was due defendant by T. Quick at end of lease?" There was evidence tending to show that defendant voluntarily cancelled and accepted the surrender of the lease from Quick three years before it would have expired, and rented the premises to another party for those years. It appeared from defendant's testimony that he was careful to call some one across the street to witness that Quick had given up. Williamson's conduct and language tend to show that he was himself anxious to have it established by a witness that Quick had surrendered, in order to rent to Broach, and he did rent to Broach that same year. The principal contention was whether the defendant accepted the surrender of the lease or not. If he did, unless there was a reservation of the right to hold Quick liable for rent thereafter, the defendant lost the right to claim damages by reason of the diminished rent paid by his new tenant. *Deane* v. *Caldwell*, 127 Mass., 242.

"The effect of a surrender is to terminate the relation of landlord and tenant, with all the obligations of the parties to that relation." Taylor's Land. & Tenant, § 518.

"So, where, before the expiration of a lease under seal, the lessee actually surrendered possession of the premises to his lessor, who accepted the same and leased them to another, it was held to be in effect a surrender." 1 Wash. Real Prop., p. 477, ch. 10, § 7 (6).

"When the tenant abandons the premises, and the landlord enters, he cannot recover for rent accruing subsequently." *Schuisler* v. *Ames*, 50 Am. Dec., 168; *Terstegge* v. *German Benevolent Society*, 47 Am. Rep., 135; *Jones* v. *Carter*, 15 Mees. & W., 718.

The Court, therefore, properly declined to give these prayers, and in lieu thereof told the jury that if "the con-

ditions of the lease had been performed by Quick, and that if the lease had been surrendered with the understanding that it should be cancelled, then the claim of the defendant could not be sustained, and that such a surrender and acceptance would end the matter," or equivalent words.

*Per Curiam.*                                         No error.