[No. 2517.   Decided June 30, 1898.]

A. E. HART, *Respondent*, v. P. R. PRATT *et ux.*, *Appellants*.

LANDLORD AND TENANT — SURRENDER OF LEASE — EVIDENCE — AGENCY — UNLAWFUL DETAINER — DOUBLE DAMAGES.

Although a lease for a term of years may be required by the statute of frauds to be put in writing, a writing signed by the lessee and delivered to the reversioner is not necessary in order to effect a surrender of the leasehold interest, if there are acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume, possession of the demised premises.

A jury is warranted in finding that a tenant surrendered his interest under a lease, when the evidence shows he knew of the sale of the premises, and, after demand that he remove, gave up control of the property, offered to do work about the place in consideration of the use of the dwelling house occupied by him, and declined to leave in the end, on account of a difficulty he had with the purchaser's agent.

A tenant may make surrender of his interest under a lease to the reversioner's agent, as well as to the reversioner himself.

Declarations of a party to the record, not given for the purpose of impeachment, are admissible against him as independent evidence in chief.

Under Code Proc., § 564, double damages may be awarded against the defendant in an action of forcible entry and detainer, where there is substantially a claim for such damages stated in the complaint.

Appeal from Superior Court, Chehalis County.—Hon. MASON IRWIN, Judge.   Affirmed.

*W. H. Abel*, and *Hogan & McGerry*, for appellants.
*Austin E. Griffiths*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—This was a proceeding under the statute relating to forcible entry and detainer (2 Hill's Code, § 547 *et seq.*; Bal. Code, § 5525 *et seq.*), to recover possession of a certain farm situated in Chehalis county, and particularly the possession of a certain dwelling house thereon. On June 10, 1894, the respondent, plaintiff below, and one J. H. Dowd were the owners of the premises in question, and on that day executed a written lease of the same, together with all the horses, cattle, hogs, farming machinery, tools, implements and other personal property used on said farm, and purchased therewith, with the appurtenances, for the term of three years. Respondent Hart was a resident of the state of Illinois and said J. H. Dowd was a resident of Kentucky. The former, at or about the time the lease was made, executed to one Hutchcraft, a general power of attorney, authorizing him, among other things, to sell her interest in the leased lands. The appellant P. R. Pratt, defendant below, was the agent of Dowd and authorized to dispose of Dowd's interest in the property. These lessees took possession of the farm and other property included in the lease, on or about June 20, 1894, and conducted the business of general farming thereon under a partnership agreement between themselves, up to June 20, 1895, at or about which time appellant Pratt, as he states in his testimony, ceased to take any part in the business.

The respective pleadings in the case are in some respects quite indefinite and contain allegations which might be construed to be inconsistent, but their sufficiency has not been challenged by either party, and we have therefore considered them as we think they were understood by all parties at the trial in the lower court. The complaint purports to state two causes of action, the first being forcible

detainer of a dwelling house, barn, etc., and the second
an unlawful detainer of the lands in question generally,
and of a certain dwelling house and appurtenances situated
thereon in particular. But, inasmuch as it is alleged in the
complaint that the premises were, on June 10, 1894, leased
to appellant P. R. Pratt and his co-lessee, as we have stated,
and inasmuch as the term had not expired at the time
this action was instituted, it follows that the respondent
was not entitled to recover upon either cause of action, un-
less appellant had actually surrendered his leasehold inter-
est to the landlord; and whether or not he had surrendered
his lease was considered the sole question for determina-
tion at the trial. The complaint alleged that, about the
20th of June, 1895, said defendants, acting by and through
defendant P. R. Pratt and said Hutchcraft, for a valua-
ble consideration, surrendered and yielded up said lease to
said premises; and, on or about said date, said Dowd sold
and conveyed to plaintiff all his right, title and interest
in the said premises, and plaintiff became the sole owner
in fee of said premises; and said defendants, after the
surrender and termination of said lease as aforesaid, prom-
ised, undertook and agreed to vacate said premises on or
about the expiration of three weeks from said 20th day
of June, 1895, and to remove themselves, family and per-
sonal effects, horses and cattle, entirely therefrom, and to
yield up the peaceable possession of said premises to the
plaintiff. The answer denied that the lease was surren-
dered up and alleged that on or before the 20th day of
June, 1895, one G. W. Maxon negotiated with the said
Hutchcraft as the agent of plaintiff, and with P. R. Pratt,
as agent of J. H. Dowd, to convey all of Dowd's interest
in the premises mentioned in the complaint and known
as the "Block-house Smith" farm, subject to all the in-
cumbrances thereon; in consideration of which the said

Maxon promised to convey to plaintiff and Dowd certain real estate in California; that thereupon, and on or about said date, said Hutchcraft, as the agent of plaintiff, purported to execute, and said P. R. Pratt did execute, as agents of their respective principals, quitclaim deeds to said Maxon of all of said premises, the deed executed by Pratt having blank grantee, and thereby conveyed unto the said G. W. Maxon all the interest of the said J. H. Dowd in and to said premises; that thereupon the said Maxon executed unto the said J. H. Dowd a quitclaim deed for certain real estate in California, and thereupon purported to execute to plaintiff a quitclaim deed to certain other real estate in California; that said Maxon was the agent of plaintiff in said transfer, and that the purported trade between plaintiff and Maxon was in reality no trade at all; that thereafter the said Maxon conveyed to plaintiff said premises set out in plaintiff's complaint; that thereupon said Hutchcraft, acting as agent of plaintiff, claimed that, by negotiations with said Maxon, defendant Pratt had surrendered and yielded up the lease which he and Hutchcraft had of said premises, and thereupon, acting as agent of the plaintiff, ordered and notified him to vacate said premises; that during the said negotiations said Hutchcraft, as agent of plaintiff, secretly requested defendant, P. R. Pratt, to allow said Hutchcraft to arrange a trade with said Maxon, and not interpose for fear Maxon could not be induced to close the contract; that defendant Pratt would not listen to the solicitations of Hutchcraft; that defendant, however, made representations to Maxon for the purpose of making him believe that the lease heretofore mentioned had been surrendered and yielded up. The plaintiff, in reply, admitted that said Maxon bought said premises from plaintiff and said Dowd, and conveyed to said Dowd certain real estate in California, and also

bought from plaintiff and Dowd all the personal property situated on said premises and used in connection therewith, in the tilling and stocking of said ranch, and that Maxon conveyed the same thereafter to plaintiff, and alleged that the transfer of said premises, together with the personal property thereon, and the surrender and termination of said lease, constituted one transaction, and that the defendant and Hutchcraft represented said Dowd and plaintiff in said transfer. The cause was tried to a jury, and they returned a verdict for plaintiff and assessed her damages in the sum of $62.50. Judgment was thereafter rendered by the court in favor of the plaintiff in double the amount of damages found by the jury, under § 564 of the Code of Procedure (Bal. Code, § 5542).

It was not claimed at the trial, nor was there any evidence to show, that the lessee, Pratt, had delivered to his lessor, or to the owner of the leased premises, any instrument or memorandum in writing surrendering his leasehold interest; and appellants claim that a surrender could only be effected by some writing signed by the lessee and delivered to the reversioner, and that the case ought not to have been submitted to the jury. While it is true, as a general proposition, that a surrender of a lease, considered as a conveyance of an interest in realty, can only be effected by some deed or other writing, under the statute of frauds, when such writing is necessary to the creation of the lease, it is equally true, under the authorities, that a surrender may result either from the express agreement of the parties, if acted upon, or by operation of law. Upon this proposition the law is stated by Wood in his work on Landlord and Tenant as follows:

" A surrender may arise either from the express agreement of the parties, or by operation of law. And, whenever a surrender is implied from the acts of the parties,

it is a surrender by operation of law. This inference may be drawn from anything which amounts to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume, possession of the premises." 2 Wood, Landlord & Tenant (2d ed.) p. 1174.

And Mr. Gear says:

" A surrender may be inferred from the circumstances and conduct of the parties, evincing that both agree to consider a surrender as made." Gear, Landlord & Tenant, § 192.

And it was said by the supreme court of Massachusetts that any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume, possession of the demised premises, amount to a surrender of the term by operation of law. *Talbot v. Whipple,* 14 Allen, 177. See, also, *Amory v. Kannoffsky,* 117 Mass. 351 (19 Am. Rep. 416); 12 Am. & Eng. Enc. Law, 758h-758j; *Bedford v. Terhune,* 30 N. Y. 453 (86 Am. Dec. 394); *Wheeler v. Walden,* 17 Neb. 122 (22 N. W. 346); *Baker v. Pratt,* 15 Ill. 568.

Such being the law, the question arises whether the conduct of the parties and the surrounding circumstances warranted the inference of the jury that Pratt had surrendered his interest under the lease. It appears from the record that, when the lease in question was made, the land included therein was heavily mortgaged, and that prior to June 20, 1895, one of the mortgagors was threatening to foreclose, and that appellant Pratt was aware of that fact; that he went to the city of Seattle for the purpose of selling his interest in the land; that while there, and after unsuccesssful efforts to sell to several parties, he finally found a man by the name of G. W. Maxon to whom he proposed to sell a one-half interest in the land and everything connected therewith, and who agreed to go and ex-

amine the property with the view of purchasing it. Maxon, however, instead of going immediately to the farm, went to his home in Portland, Oregon, and subsequently wrote to Mr. Pratt that he had concluded not to purchase a half interest in the premises, and on June 13, 1895, he wrote to Pratt and Hutchcraft as follows:

"I will make you the following offer, viz., I will give you the 320 acre ranch near Centerville, subject to incumbrance, as you understand, including crops, for your $884\frac{1}{2}$ acres, including all of the partnership personalty, stock, crops, etc., subject to incumbrance, as understood. I do not care to trade for an undivided interest. Now, if this proposition suits you, wire me and I will go up and close the matter at once."

This proposition was accepted, and Maxon accordingly went to the farm, and, after viewing it, proceeded to consummate the agreement. Pratt at that time had a deed from Dowd of his interest in the land, with grantee's name in blank, and that deed was delivered to Maxon, together with a deed from respondent for her interest in the premises. A bill of sale of all the personal property included in the lease and also the hay, grain, crops and utensils, etc., owned by respondent and Dowd, was also delivered to Maxon. Maxon thereupon deeded certain lands in the state of California to respondent and certain other lands to the said J. H. Dowd, in accordance with his original proposition. Hutchcraft testifies, in effect, that, after that was done, Maxon put everything in his charge and then stated to appellant, P. R. Pratt, that he would give him three weeks to remove his family and effects from the premises, but no longer. This testimony was not denied by appellant. It is also shown by the evidence that, at the time the deeds just mentioned were executed, Maxon called for the lease held by Pratt and Hutchcraft; but it could not be found with the other papers that were delivered

to Maxon, each of the lessees supposing that the other had it. Hutchcraft, however, says that it was considered as surrendered up at the time; and it appears to have been so considered by Maxon, else he would not have assumed to control the possession of the premises. And, moreover, it is in evidence that at the time of this trade, on June 20, appellant Pratt agreed to milk the cows then on the ranch, in consideration of the use of the dwelling house occupied by him. It was shown by the testimony of numerous witnesses that, about the time of this transaction, Pratt stated to them that he had " sold out " and was going to California or to Puget Sound. One of the witnesses testified that about June 20, 1895, Pratt wanted to rent his house, saying that " Hutchcraft was talking of putting him out of the house and in case he had to go sooner than he was ready, he wanted to move into my (witness's) house." The evidence further discloses that Mr. Pratt virtually gave up all control of every part of the premises covered by his lease except the dwelling house which he was then occupying, and the barns and sheds used in connection therewith, and that he and Hutchcraft submitted the settlement of their partnership affairs to arbitration. It is true that Mr. Pratt says he did not intend to surrender his leasehold interest, but he admits he expected to sell it to Maxon thereafter. But it appears to us from the evidence, including his own, that Pratt finally concluded not to leave the farm within the time limited by Maxon, on account of a difficulty he had with Hutchcraft on or about the 22d of June, and not because he had not promised and intended to leave. In fact, Mr. Pratt stated, in effect, to some of the witnesses who testified in the case, that he was not questioning the sale, but the " underhanded manner " in which he thought Hutchcraft had gotten the possession of the farm. It appears that, after the

deeds from Dowd and respondent had been given to Maxon, he started for home and was accompanied by Hutchcraft as far as the city of Centralia, and that, while there, Hutchcraft purchased the premises, and the property included in the bill of sale above mentioned, from Maxon, for the respondent for the sum of $600 and certain real estate; but, instead of making a new deed from Maxon to respondent for the interest bought of Dowd, the respondent's name was inserted in the Dowd deed, thus making it appear to be a purchase directly from Dowd, instead of from Maxon, as the fact really was. The court, however, instructed the jury, in substance, that that fact made no difference to Pratt as he could in no way be injured thereby, and no objection was made to the instruction. In fact, no exceptions were taken to any part of the court's charge to the jury. In view of all the facts and circumstances of the case, including the acts of the parties, we think the jury were warranted, under the instructions of the court, as to the law, in concluding that the appellant intended to, and did, surrender his leasehold interest to Maxon as a part of the transaction of June 20, 1895.

But appellants insist that the court erred in receiving in evidence the declarations of Pratt, as testified to by these various witnesses, on the ground that no sufficient foundation had been laid for their introduction. But it is a sufficient answer to this contention to observe that the testimony was not given for the purpose of impeachment, but was adduced as independent evidence in chief, and it was therefore admissible as the declarations of a party to the record. 1 Greenleaf, Evidence (15th ed.), § 171.

It is also contended by appellants that there was no surrender of the lease, for the further reason that the surrender, if made at all, was to Maxon, and that he had no interest in the premises, and therefore was not entitled

to accept a surrender of the lease.  Under the familiar rule that a surrender must be made to the lessor or to the party who has the immediate estate in reversion, it would appear from the allegation of the answer that the land was sold to Maxon; that, as against appellants, Maxon was the reversioner.  If, however, the other allegation be true, that Maxon was but the agent of the respondent, then the same result would follow; for if the surrender was made to respondent's agent and accepted by him for her, it was equivalent to a surrender to her in the first instance.

There does not appear to be any substantial foundation for appellants' contention that the court had no right to give judgment for double damages, under the rule announced by this court in *Hall & Paulson Furniture Co. v. Wilbur,* 4 Wash. 644 (30 Pac. 665), and *Gaffney v. Megrath,* 11 Wash. 456 (39 Pac. 973).  Such damages were substantially claimed in the complaint, and were therefore recoverable under the rule laid down in those cases.

Upon the whole case, we are of the opinion that the judgment should be affirmed, and it is so ordered.

Scott, C. J., and Dunbar, Gordon and Reavis, JJ., concur.