J. H. MONGER v. R. B. LUTTERLOH AND P. K. SCHULER, PARTNERS TRADING AS THE LUTTERLOH-SCHULER COMPANY.

(Filed 7 March, 1928.)

**1. Landlord and Tenant—Leases—Surrender by Operation of Law.**

Where a lessee wrongfully breaches his contract by failing to enter and take possession under a lease on a building especially constructed for him, and the lessor, with the intent to diminish the damage, rightfully reënters the premises and rents it to another, he acts in trust for them both, and there is no surrender of the lease by operation of law, and the lessee is liable for damages.

**2. Landlord and Tenant—Leases—Measure of Damage in Action for Breach.**

The measure of damages in an action for the wrongful breach of a contract of lease is the difference, if any, between the contract price and the fair rental value for the term of the lease.

**3. Landlord and Tenant—Leases — Burden of Proof of Possibility of Minimizing the Damage.**

Where the lessee has wrongfully breached his contract of lease, and the lessor brings his action for the resulting damages based upon the rental value as fixed by the lease, the burden is on the defendant to show that in the exercise of good business prudence the lessor could have leased to another and minimized the damages, and the amount thereof.

**4. Landlord and Tenant — Leases — Surrender by Operation of Law — Presumptions.**

Where a lessee wrongfully refuses to take possession of leased realty, and the lessor rightfully reënters and leases to another, there is a presumption of law that the lessee surrenders the property and that the lessor accepts the surrender; but this presumption is rebuttable by evidence of the intent of the parties as expressed in the lease, and by their words and acts.

**5. Landlord and Tenant—Leases—Termination in General.**

A written contract of lease of lands will ordinarily be construed to remain in force until it is rescinded by the mutual consent of the parties, or until the party claiming under it does some act inconsistent with the duty imposed on him by the agreement that amounts in law to a surrender on his part, and an acceptance of such surrender by the other party.

**6. Landlord and Tenant—Leases—Statutes.**

The forfeiture implied by C. S., 2343, upon failure to pay rent within ten days after demand where a definite time is fixed for the payment of a stipulated rent, is for the benefit of the lessor, and to be declared only at his application, and does not apply to the facts of this case.

**7. Records—Agreement of Record.**

The question of whether the lessor is required to notify his lessee that he has reëntered the leased premises after the lessee's wrongful breach, in order to minimize the damages, does not arise in the present action, under an agreement appearing of record, that the damages, if any, should be assessed to the termination of the contract period.

APPEAL by plaintiff from *Grady, J.,* at September Term, 1927, of LEE. Civil action by lessor to recover damages from lessee for an alleged wrongful breach of a rental contract, in words and figures as follows, to wit:

"20 Feb., 1926. The Schuler-Lutterloh Company and J. H. Monger hereby agree: That J. H. Monger is to build a garage for Schuler-Lutterloh Company at once. The rent to be $150.00 per month for a term of 2 years.

"LUTTERLOH-SCHULER MOTOR COMPANY.

"Per P. K. Schuler, President.

J. H. MONGER.

"2/20/26."

There was evidence tending to show that the plaintiff, in accordance with this agreement, constructed a garage and salesroom in the town of Sanford, especially designed for showing Chrysler cars, as desired by defendants, and duly tendered same for occupancy during April or May, 1926.

The jury found, by consent, that the defendants had wrongfully failed and refused to accept plaintiff's building and pay rent for same as agreed.

Six months thereafter, when it appeared certain that the "defendants were not going to occupy the building," plaintiff remodeled same at considerable expense and leased it to other parties.

There is no allegation of a surrender of the premises by the defendants and an acceptance of such surrender by the plaintiff; nor is there any plea of a cancellation or rescission of the contract. No evidence was offered by the defendants, and the record contains the following stipulation: "It was agreed in open court that the damages in this case should be assessed up to the end of the contract, and defendants waived any rights that they might have because the suit was prematurely brought. 1 November, 1926, was agreed upon as the date upon which the plaintiff's damages for the second remodeling of the building should be deemed to have accrued. These agreements were made for the purpose of this trial only."

The trial court held that as the plaintiff reëntered and took possession of the demised premises during the month of September, 1926, he could recover only such rent as had accrued under the contract up to that time. From the verdict rendered in accordance with this instruction, and judgment entered thereon, plaintiff appeals, assigning errors.

*A. A. F. Seawell and Hoyle & Hoyle for plaintiff.*
*Dye & Clark for defendants.*

STACY, C. J. It was conceded on the hearing that the defendants had wrongfully breached the rental contract, and that damages should be assessed up to the end of the term. There is no allegation of a surrender of the demised premises by the defendants and an acceptance of such surrender by the plaintiff. Nor is there any plea of a cancellation or rescission of the lease. In this state of the record, we think the trial court erred in limiting the damages to six months' rent under the contract.

In the absence of a surrender and acceptance, an eviction, or a release, and when no stipulation controlling the matter is to be found in the agreement of the parties, ordinarily the measure of damages for the

wrongful breach of a rental contract and abandonment of the demised premises, or refusal to enter, on the part of the lessee, is the difference, if any, between the rent reserved in the contract and the rent received from another letting, or the fair rental value where the lessor reënters and uses the premises for the benefit of the lessee and on his account without effecting a surrender or terminating the lease. *Scheelky v. Koch,* 119 N. C., 80, 25 S. E., 713; *Everett v. Williamson,* 107 N. C., 204, 12 S. E., 187; *Brewington v. Loughran,* 183 N. C., 558, 112 S. E., 257; *Torrans v. Stricklin,* 52 N. C., 50. This, we think, is the rationale of our decisions on the subject, when viewed in their entirety, as well as of the best considered cases elsewhere. Note 3 A. L. R., 1080.

It is to the interest of the tenant that the premises should be occupied, rather than stand idle. If the landlord relet at the same rent, the tenant is entirely relieved; if, at less, he is liable only for the difference. *Auer v. Penn.,* 99 Pa. St., 370, 44 Am. Rep., 114.

True, it is said in a number of cases on the subject that when the landlord reënters and resumes the beneficial use and enjoyment of the premises, or relets, as a general rule, an acceptance of the surrender of the tenement is presumed, or effected by operation of law, and he thereby terminates the lease in so far as his right to recover subsequently accruing rent is concerned. *Dennis v. Miller,* 68 N. J. L., 320, 53 Atl., 394; *Hart v. Pratt,* 19 Wash., 560, 53 Pac., 711; Notes, 18 A. L. R., 957, and 3 A. L. R., 1080; 16 R. C. L., 1152. But this is not an irrebuttable presumption and in no event would it affect the tenant's liability for rent already accrued. *Schuisler v. Ames,* 16 Ala., 73, 50 Am. Dec., 168. Nor will a surrender be implied against the intent of the parties, as manifested by their acts. *Murrill v. Palmer,* 164 N. C., 50, 80 S. E., 55; *Coe v. Hobby,* 72 N. Y., 141, 28 Am. Rep., 120; *Smith v. Hunt,* 32 R. I., 326, 79 Atl., 826, Ann. Cas., 1912 D, 971, 35 L. R. A. (N. S.), 1132, and note. A surrender, to be effectual, must be accepted by the lessor. *Auer v. Penn., supra.* And where it appears, as here, that no actual acceptance of the surrender was intended, or made, the tenant may still be held liable for his admittedly wrongful breach of the contract. Note, 14 Ann. Cas., 1088; 16 R. C. L., 969 *et seq.*

Mr. McAdam in his work on the subject of Landlord and Tenant states the general rule as follows: "When a tenant abandons premises, and returns the keys to the landlord, the latter may accept the keys as a surrender of possession, thereby determining the tenant's estate, and relet the premises on his own account, or he may accept the keys and resume possession conditionally by notifying the tenant or other person returning the keys that he will accept the keys but not the premises, and relet them on the tenant's account, in which case the tenant may be

held for any loss in rent caused by his abandonment and the subsequent reletting." 2 McAdam, Landlord and Tenant (3 ed.), 1283. See, also, *Hayes v. Goldman,* 71 Ark., 251, 72 S. W., 563; *Brown v. Cairns,* 63 Kan., 584, 66 Pac., 639.

Ordinarily it may be said that a contract is considered to remain in force until it is rescinded by mutual consent, or until the party claiming under it does some act, inconsistent with the duty imposed upon him by the agreement, which amounts to an abandonment of it on his part. *Dula v. Cowles,* 52 N. C., 293; *Hutchins v. Hodges,* 98 N. C., 404, 4 S. E., 46. See, also, *Willis v. Branch,* 94 N. C., 142.

It ought not to be held that a landlord cannot, in any event, enter and relet or make use of the abandoned premises without effecting a surrender as a matter of law, for, in many cases, to suffer the premises to remain vacant during the term would prove more costly or injurious to the owner than to lose the entire rent; and, if the lessor is not permitted to enter and relet or use the property in any way, without effecting a surrender, or terminating the lease, the tenant could thus, through a wrong, force a termination, by simply abandoning the premises, or compel the landlord to elect between the lesser and greater of two losses. 16 R. C. L., 971. This would be to sanction the doctrine that might makes right.

> Because the good old rule
> Sufficeth them—the simple plan,
> That they should take who have the power,
> And they should keep who can.—*Wordsworth.*

But such, we apprehend, is not the law. *Rouse v. Kinston,* 188 N. C., 1, 123 S. E., 482. When a tenant wrongfully abandons the demised premises before the expiration of the time for which they are leased, or refuses to enter after executing a binding contract to do so, it is but meet that the owner should be permitted to take charge of the premises, relet or use them for the benefit of the tenant, and thus minimize his own loss and at the same time reduce the amount of the lessee's liability. *Murrill v. Palmer, supra; Holton v. Andrews,* 151 N. C., 340, 66 S. E., 212; *Scheelky v. Koch, supra; Auer v. Hoffman,* 132 Wis., 620, 112 N. W., 1090; *Levy v. Burkstrom,* 191 Ill. App., 478; 36 C. J., 340. See, also, valuable note, North Carolina Law Review, December, 1927, p. 68.

As to whether the landlord must notify the tenant, in order to prevent a surrender by operation of law, that the reëntry is for the benefit of the latter, to be used or relet on his account, as held in a number of jurisdictions, does not arise on the present record, because it "was agreed in open court that damages should be assessed up to the end of the contract."

When a party breaches his contract without any valid excuse, the courts are not inclined to permit him to prescribe the rights of the innocent party, but their chief concern is in making the plaintiff whole and securing to him his rights under the contract. *Construction Co. v. Wright,* 189 N. C., 456, 127 S. E., 580. Nevertheless, it is a well established rule in this jurisdiction that one who is injured in his person or property by the wrongful act or negligent default of another, is usually required to protect himself from loss, if he can do so with reasonable exertion or at trifling expense, and ordinarily he will be allowed to recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided. *Mills v. McRae,* 187 N. C., 707, 122 S. E., 762; *Adv. Co. v. Warehouse Co.,* 186 N. C., 197, 119 S. E., 196.

"The general principle is fully recognized with us that, in case of contract broken, or tort committed, the injured party should do what reasonable care and business prudence require to minimize the loss." *Hoke, J.,* in *Yowmans v. Hendersonville,* 175 N. C., 574, 96 S. E., 45.

In a case like the present, we think the landlord should be permitted, if not required, in furtherance of this salutary rule, to do what reasonable prudence and ordinary business sagacity dictate, without necessarily working a surrender of the premises by operation of law. Indeed, it might well be said that such was reasonably within the minds of the parties at the time of the making of the contract, though no provision with respect to reëntry is inserted therein, for it is familiar learning that the general law of the State, in force at the time of the execution of a contract, enters into and becomes as much a part of the contract as if it were expressly referred to or incorporated in its terms. *House v. Parker,* 181 N. C., 40, 106 S. E., 137; *Hughes v. Lassiter,* 193 N. C., 651, 137 S. E., 806.

The rule is too firmly embedded in our jurisprudence to need repeating, that ordinarily the amount of loss which a party to a contract would naturally and probably suffer from its nonperformance, and which was reasonably within the minds of the parties at the time of its making, including such special damages as may be said to arise directly from circumstances existent to the knowledge of the parties, and with reference to which the contract was made, is the measure of damages for the breach of said contract. *Causey v. Davis,* 185 N. C., 155, 116 S. E., 401. Such was the rule laid down in the celebrated case of *Hadley v. Baxendale,* 9 Exch., 341, and this case has been consistently followed by us. *Iron Works Co. v. Cotton Oil Co.,* 192 N. C., 442, 135 S. E., 343; *Builders v. Gadd,* 183 N. C., 447, 111 S. E., 771; *Cary v. Harris,* 178 N. C., 624, 101 S. E., 486; *Peanut Co. v. R. R.,* 155 N. C., 148, 71 S. E., 71; *Coles v. Lumber Co.,* 150 N. C., 183, 63 S. E., 736.

MONGER *v.* LUTTERLOH.

The party charged with responsibility for breach of the contract has the burden of showing matters in mitigation of damages; for in the absence of such proof, nothing else appearing, save the wrongful breach of the agreement, prima facie the plaintiff would be entitled to recover the amount fixed by the terms of the lease. *Construction Co. v. Wright, supra; Mills v. McRae, supra; Smith v. Lumber Co.,* 142 N. C., 26, 54 S. E., 788; *Hendrickson v. Anderson,* 50 N. C., 246; *Beissel v. Elevator Co.,* 102 Minn., 229, 113 N. W., 575; *Milage v. Woodward,* 186 N. Y., 252, 78 N. E., 873.

Authoritative decisions are to the effect that if the tenant wrongfully abandon the premises, and the landlord reënter under a provision of the lease permitting or requiring him to do so, it is his duty to use reasonable diligence to find a new tenant, or otherwise to do what reasonable prudence requires, in order to lessen his damages. *Marling v. Allison,* 213 Ill. App., 224; *Bradbury v. Higginson,* 162 Cal., 602, 123 Pac., 797; *Walsh v. Shinner,* 20 Fed. (2d), 586.

By the rental value, for which the lessor must account when he reënters and makes use of the premises without accepting a surrender or terminating the lease, is meant the fair market value, to be ascertained by proof of what the premises would rent for in the open market, or by evidence of other facts from which the fair rental value of the property may be determined. *Brewington v. Loughran, supra,* and cases there cited.

Speaking to the subject generally, in *Smith v. Hunt, supra, Parkhurst, J.,* delivering the opinion of the Court, says: "The relation of landlord and tenant cannot be determined except by the expiration of the lease, where there is a lease for a fixed term, or, in case of a tenancy from year to year or from month to month, by notice given in accordance with the statutory requirements, except by the surrender of the premises by the tenant and the acceptance of such surrender by the landlord. Whether or not there has been such acceptance or surrender is to be determined by the intention of the parties. This intention is to be determined by their acts and words (citing authorities). In case of abandonment of leased premises by a tenant, it is the landlord's right to enter upon the premises and do such work as is necessary for the protection of the property, and entrance for such purpose and the performance of such work will not convert a mere abandonment by the tenant into a surrender and an acceptance thereof (citing authorities). It is also held that the resumption of possession by the landlord, and the making of general repairs before the expiration of the term, is not conclusive evidence of an acceptance of a surrender, but is entirely consistent with a distinct refusal."

In *Breuckmann v. Twibill,* 89 Pa. St., 58, the facts in the case showed that, after abandonment by the tenant and during the time for which rent was claimed, "the plaintiff immediately took possession of said premises and proceeded to repair the house, by building a new bathroom, a new porch, putting in a new range, and making general repairs, such as could not have been done while the house was occupied by a tenant; deponent saw the house repeatedly during the time for which rent is claimed in the suit, and plaintiff was in possession all that time, and said repairs were going on for the greater part of that time." Upon this state of facts the court in its opinion says: "The plaintiff in error in his affidavit of defense very carefully avoided alleging that there was a surrender of the lease accepted by the landlord. Certain facts are averred which, standing by themselves, would be evidence from which a jury might infer a surrender, but yet entirely consistent with a distinct refusal. Taking possession, repairing, advertising the house to rent, are all acts in the interest and for the benefit of the tenant, and do not discharge him from his covenant to pay the rent."

When demised premises are abandoned by the tenant, and the landlord accepts a surrender, voluntarily, or by operation of law, the lease is at an end, and, of course, he cannot recover for rent which would have accrued thereafter under the contract. *Everett v. Williamson, supra.*

It is provided by C. S., 2343, that in all verbal or written leases of real property of any kind in which is fixed a definite time for the payment of the rent reserved therein, there shall be implied a forfeiture of the term upon failure to pay the rent within ten days after a demand is made by the lessor or his agent on the lessee for all past due rent, and the lessor may forthwith enter and dispossess the tenant without having declared such forfeiture or reserved the right of reëntry in the lease. But this implied forfeiture provided by the statute, we apprehend, is for the benefit of the lessor, and is to be declared and enforced only at his option. *Ryan v. Reynolds,* 190 N. C., 563, 130 S. E., 156.

After the execution of a valid lease, the rights of the landlord are practically the same whether the tenant refuse to take possession, or enter and thereafter abandon the premises before the end of the term. Note, 40 A. L. R., p. 197.

For the error, as indicated, a new trial must be awarded; and it is so ordered.

New trial.