**James I. MARTIN, Plaintiff,**

v.

**Percy T. STIERS, Defendant.**

**Civ. A. No. C-57-G-57.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 4, 1958.

Major S. High and J. Kenneth Lee, Greensboro, N. C., for plaintiff.

Clyde T. Rollins, Greensboro, N. C., for defendant.

STANLEY, District Judge.

The plaintiff, James I. Martin, a citizen and resident of the state of Virginia, instituted this suit against the defendant, Percy T. Stiers, a citizen and resident of the state of North Carolina, and within the jurisdiction of this court, alleging the breach of an oral contract for the rental of ten acres of tobacco land by the plaintiff from the defendant, and seeking recovery of $10,000 as damages by reason of the alleged breach.

On July 7, 1958, the case came on for trial before the court without a jury. At the conclusion of the trial, the court took the case under advisement pending receipt of briefs from the parties in support of their contentions. The briefs of the parties having been received, the court, after considering the pleadings, evidence, and briefs of the parties, now makes and ·files herein its findings of fact and conclusions of law, stated separately:

Findings of Fact

1. The plaintiff, James I. Martin, is a citizen and resident of the state of Virginia. The defendant, Percy T. Stiers, is a citizen and resident of the state of North Carolina. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

2. During the months of March and April, 1955, the plaintiff, a farmer with some thirty years of experience in growing tobacco, conferred with the defendant concerning the rental of certain tobacco land. The defendant had an interest in a large farm in Rockingham

County, North Carolina, that had a tobacco allotment in excess of forty acres. The conferences between the plaintiff and the defendant finally culminated in an agreement whereby the defendant was to rent plaintiff ten acres of tobacco land and allotment for the 1955 season.

3. Under the terms of said oral contract, the defendant was to furnish the land, tobacco plants, fertilizer, curing barns, pack houses, and other facilities required for cultivating, harvesting, and marketing the tobacco crop. The plaintiff was to furnish the necessary labor for preparing the soil and planting, cultivating, harvesting, and marketing the crop, and also was to furnish the necessary trucks and tractors to accomplish these purposes. Under these arrangements, the plaintiff and defendant were to each receive one-half the proceeds from the sale of the tobacco grown.

4. The day following the agreement between the plaintiff and the defendant, the plaintiff took two tractors upon the land rented from the defendant and started preparing the soil for planting. After some slight delay, the plaintiff was furnished with the necessary fertilizer, but, in breach of the agreement, the plaintiff was charged with one-half of the fertilizer bill. However, since the plaintiff has never paid any part of the fertilizer bill, he was not damaged by this breach of the agreement.

5. The defendant further failed, in breach of the agreement, to furnish the plaintiff with the necessary tobacco plants for planting the crop and the necessary sticks for housing and curing the tobacco. However, the plants and sticks in sufficient quantities were obtained by the plaintiff after some delay and considerable inconvenience to the plaintiff. The breach of the contract in this respect resulted in little damage to the plaintiff.

6. When the time came for harvesting and curing the tobacco, the plaintiff requested the defendant to make adequate curing facilities available to him. Only one curing barn was made avail-

able, and a witness offered by the defendant testified that at least three tobacco barns would have been required to harvest the ten acres of tobacco as grown by the plaintiff. After the plaintiff used the one curing barn made available to him to save a portion of his crop, the only storage facility made available to him for storing the tobacco was a building with a portion of the siding and roof torn off. This building leaked to such an extent that practically all the tobacco cured by the plaintiff became wet and rotted before it could be marketed. The plaintiff requested the defendant to allow him to remove the cured tobacco to his home for storage in order to save a portion of the crop, but the defendant refused this request and stated that for all he cared the plaintiff could "hang the tobacco up under the trees."

7. As a result of defendant's failure to furnish sufficient curing barns, in violation of his agreement with the plaintiff, a large portion of the ten-acre tobacco crop spoiled in the field.

8. As a result of defendant's failure to furnish suitable and adequate facilities for storing the tobacco and preparing it for market after it had been cured, in violation of his agreement with the plaintiff, much of the tobacco that was cured rotted in the storage barn.

9. The entire tobacco crop grown on the ten-acre tract brought a total of $106, all of which was kept by the defendant.

10. The plaintiff furnished all the labor, trucks and tractors necessary for planting, harvesting, curing, and marketing of said tobacco crop and otherwise complied with the terms of his agreement with the defendant.

11. If the defendant had made available to the plaintiff adequate curing and storage facilities in accordance with the oral contract, plaintiff's tobacco crop would have yielded 15,000 pounds of tobacco that would have sold for an average of forty cents per pound, or a total of $6,000. Of this amount, plaintiff, under the terms of his agreement with the

defendant, would have received one-half, or a total of $3,000.

12. The plaintiff would have been required to perform additional labor in curing and marketing his tobacco crop had defendant complied with the terms of the agreement, but this was partially offset by the extra trouble and expense required of the plaintiff by the reason of failure of the defendant to furnish plants and sticks.

13. Plaintiff expended the sum of $552 for labor, $113 for gasoline, and $99 for hail insurance in connection with the tobacco crop in question. The only money he has received in connection with the entire transaction was $25 which he borrowed from the defendant and which has not been repaid.

## Discussion

■ Since this is a diversity suit and the contract in question was executed and was to be performed in the state of North Carolina, the substantive law of North Carolina governs the rights and liabilities of the parties. Bundy v. Commercial Credit Co., 1931, 200 N.C. 511, 157 S.E. 860; M. W. Zack Co. v. R. D. Werner Co., 6 Cir., 1955, 222 F.2d 634; Erie Railroad Co. v. Tompkins, 1937, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ The contract under consideration relates to the rental of land to grow a crop of tobacco, with each of the parties to receive one-half of the market price when the crop was sold. By the terms of the agreement, the plaintiff was a cropper having no estate in the land and, under such circumstances, the oral contract is valid. Section 22-2, General Statutes of North Carolina; Haskins v. Royster, 1874, 70 N.C. 601; and 15 Am.Jur. 235, Crops, Section 45.

The material facts with respect to the terms of the contract the plaintiff had with the defendant are not in serious dispute. The plaintiff testified that his contract was with the defendant personally. The plaintiff offered the testimony of James L. Madison to corroborate the fact that the defendant rented the plaintiff ten acres of tobacco land and the other terms of the agreement. The defendant, who is an attorney, was present in court throughout the entire trial but did not testify. Certain witnesses were offered by the defendant relating to the failure of the plaintiff to properly perform the contract and as to the number of acres of tobacco he tended, but none of these witnesses were present at the time the plaintiff and his corroborating witness testified the agreement was made with the defendant. The defendant offered Thomas Broadnax as a witness who testified that plaintiff grew a ten-acre field of tobacco on defendant's land and that the crop was properly cared for until immediately after a storm that occurred some time in October of 1955. The only criticism this witness made in regard to the plaintiff's performance of the contract was that the tobacco was not properly straightened up after the storm.

■ There is no exact mathematical formula with which to measure the damages resulting from the breach of a contract of this nature. Counsel for the defendant contends that in the present case the damages suffered by the plaintiff are too remote, uncertain, and speculative to be actionable. In support of this argument, the case of Perry v. Kime, 1915, 169 N.C. 540, 86 S.E. 337, is cited. In that case, damages were sought for breach of warranty in the sale of a mule purchased to cultivate a crop. The plaintiff alleged that the breach had resulted in the diminution of his crop. As a measure of damages, plaintiff sought to recover the difference between the yield for the previous year and the yield for the current year. The court held that this test was too uncertain due to the many factors which cause crops to vary from season to season. In the case under consideration, the plaintiff grew a crop of tobacco and there was creditable evidence that the crop would have brought an average of forty cents per pound had defendant complied with the terms of the contract with respect to curing and storage facilities. Proof of what the

value of the matured crop would have been is competent evidence on the question of damages for the loss of the crop. Sanderlin v. Shaw, 1858, 51 N.C. 225. Thus, it can be established with a reasonable degree of certainty how much plaintiff would have received from the sale of the crop if the contract had been fully performed by both parties. Absolute certainty is not required. Wilkinson v. Dunbar, 1908, 149 N.C. 20, 62 S. E. 748.

■ Where a breach of contract is shown, the chief concern of the court is to make the plaintiff whole and to secure to him his rights under the contract. Monger v. Lutterloh, 1928, 195 N.C. 274, 142 S.E. 12, and Norwood v. Carter, 1955, 242 N.C. 152, 87 S.E.2d 2, 50 A.L.R.2d 608.

In Chesson v. Kieckhefer Container Co., 1939, 215 N.C. 112, 1 S.E.2d 357, 358, the court said:

"The general rule is that a party to a contract, who has been injured by the breach, is entitled as compensation therefor to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed, and where the breach of contract consists in preventing its performance, the party injured, on proper proof, may recover the profits he would have realized had the contract not been breached."

■ This does not mean that the plaintiff is entitled to recover the full amount he would have received from the sale of the crop, since the curing, storing and marketing of the entire crop would have involved additional labor and expense to the plaintiff. Spencer v. Hamilton, 1893, 113 N.C. 49, 18 S.E. 167. The correct measure of damages would be the difference between the share that plaintiff would have received from the sale of the crop, less the amount it would have cost him to complete the contract. Wilkinson v. Dunbar, supra, and 15 Am.Jur. 262, Crops, Section 81.

■■ Of course, plaintiff had a duty to take reasonable steps to minimize the damages resulting from defendant's breach of the contract. Andrews & Knowles Produce Co., Inc., v. Currin, 1955, 243 N.C. 131, 90 S.E.2d 228. In the present case, the plaintiff requested that he be allowed to remove the tobacco crop to his home in order to save the crop, but the defendant refused to allow this. The burden is on the party who breached the contract to show matters in mitigation, and the defendant has failed to show by creditable evidence that plaintiff failed to exercise reasonable diligence and prudence to minimize the loss. Monger v. Lutterloh, supra.

The court has arrived at the damage the plaintiff is entitled to recover in this case by considering the amount the plaintiff would have received from the sale of the ten-acre crop of tobacco had the contract not been breached by the defendant, and subtracting therefrom the value of the services not performed in curing and marketing the tobacco.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter herein.

2. There was a valid oral agriculture tenancy contract between the plaintiff and the defendant whereby the plaintiff was to grow ten acres of tobacco on defendant's farm during the 1955 tobacco season.

3. The contract was performed to the fullest extent possible by the plaintiff, and there was a breach of the contract by the defendant.

4. Plaintiff is entitled to recover the sum of $2,500 as damages for the breach of the contract.

A judgment will be entered accordingly.