ANDREWS & KNOWLES PRODUCE COMPANY, INC., v. BUCK CURRIN, HANK CURRIN, JACK CALHOUN, AND TOM SMOTHERS, TRADING AS BIG FOUR WAREHOUSE.

(Filed 23 November, 1955.)

1. Landlord and Tenant § 12—

The lease provided that lessee should enclose space in lessors' warehouse and pay lessors a stipulated rent per 1,000 square feet of space enclosed. *Held:* The enclosure of space by lessees pursuant to the agreement fixed the location and dimensions of the space leased, and during the term lessors

had no right to dismantle any part of the enclosure or take possession of the leased space.

**2. Same—**

Plaintiff leased certain space in defendants' warehouse. The lease provided that lessors should have the right to use the space for the sale of tobacco from the beginning of the season of any year until October 15. During the term, lessors dismantled part of the enclosure. Lessors offered evidence that the reason the enclosure was dismantled was in order for lessors to have the space considered by the Tobacco Board of Trade in calculating the selling time to be allotted to lessors. *Held:* The evidence is irrelevant, since it explains why lessors dismantled the enclosure, but does not establish legal justification thereof.

**3. Landlord and Tenant § 8—**

In the absence of provision to the contrary, there is an implied covenant that the lessee shall have the quiet and peaceable possession of the leased premises during the term.

**4. Landlord and Tenant § 12—**

The unauthorized entry and repossession of the leased premises by lessors, or others acting under their direction, constitutes a breach of the lease agreement, entitling lessee at his election to sue for damages.

**5. Same—**

The measure of damages for the lessors' unauthorized repossession of the premises during the term is the difference between the rent agreed upon and the market rental value for the remainder of the term, plus any special damages alleged and proved.

**6. Same—**

Where lessee makes improvements on the property as authorized by the lease agreement, and during the term lessors take unauthorized possession of the premises, the measure of damages, in the absence of allegation and proof of special damages, is the difference between the rent agreed upon and the fair rental value of the leased premises, as improved, for the remainder of the term.

**7. Same—**

Where lessee, under the provisions of the lease, encloses a part of lessors' warehouse, under agreement that the cost of such improvements should apply to rent, evidence of the cost of the improvements is competent for the purpose of showing that lessee had paid the rent by application of the costs of the improvements for the full five-year term, and is not objectionable as tending to prove special damages without allegation thereof.

**8. Same—**

Where the issue of damages for lessors' breach of the lease agreement involves solely the determination of the fair value of the leased premises, as improved by lessee, for the remainder of the term, an instruction giving the jury the basic rule for measuring damages for breach of contract, together with the conflicting contentions of the parties based thereon, will not be

held erroneous for asserted failure of the court to apply the general rule to the evidence in the case.

**9. Same: Damages § 6—**

When the rule as to the duty to minimize damages applies, the party who breached the contract has the burden of showing matters in mitigation.

**10. Same—**

Lessors breached the lease agreement by taking unauthorized possession of the premises during the term. No special damages were alleged or proved, and the issue of damages related solely to the difference between the rent agreed and the rental value of the premises as improved by lessee. *Held:* The rule requiring a party to minimize his damages has no application to lessee.

APPEAL by defendants from *Paul, J.,* April Civil Term, 1955, of WAYNE.

Civil action commenced 25 February, 1954, to recover damages of $2,000.00 on account of alleged breach of a lease agreement.

It is undisputed that, under date of 20 October, 1950, defendants-lessors, designated therein as "first party," and plaintiff-lessee, designated therein as "second party," executed a lease agreement, which, except as to formal provisions, was as follows:

"First party does hereby lease second party up to 5,000 square feet of space in the Big Four Warehouse, located at Dunn, North Carolina, (the warehouse that is being used as a sweet potato market) at $30.00 per thousand square feet per annum for the space enclosed by second party. It is agreed and understood that this lease will continue in force for a period of 5 years beginning October 15, 1950, unless terminated prior to that time by second party. Second party may terminate lease by notifying first party in writing any year prior to October 1st.

"Second party agrees to construct walls, etc., necessary to make suitable for storing sweet potatoes and other merchandise. The cost of said construction including stove flues is to be applied on rent. However, party of the second part is to bear the expense of heating equipment. First party agrees to keep roof in condition to prevent leaking.

"In case first party desires to use warehouse for the operation of tobacco market, it is agreed and understood that said space may be used for the sale of tobacco from the beginning of season, in any year, until October 15th."

After the signatures, these words appear: "Should contents cause increase in insurance rate on building parties are to adjust same."

After the lease agreement was executed, plaintiff, in the Fall of 1950, enclosed a space 80 x 40 feet, on the floor of defendants' warehouse. It appears that the posts in the warehouse floor were in rows, 20 feet apart. Plaintiff constructed walls (about 14' high) to the ceiling,

together with necessary doors, windows and ventilation, cornering the enclosure at certain of the warehouse posts. A partition was built through the center, thus dividing the enclosed space into two separate compartments. Heating equipment, including flues, was installed.

Plaintiff's evidence tends to show that the actual cost of such construction was as follows: for materials, including uprights, weatherboarding, doors, windows, etc., $672.50, and $463.57 for labor, a total of $1,136.07. Defendants' evidence tends to show that the reasonable cost of such construction was between $400.00 and $500.00.

The space so enclosed by plaintiff was used by it for the storage of sweet potatoes during the 1950 and 1951 seasons. It was not used during the 1952 season, plaintiff's evidence tending to show there was a short crop, almost a failure, that year.

In the summer of 1953 the storage enclosure so constructed by plaintiff was dismantled by defendants except for two sides thereof. These became a part of a new enclosed space, 160' x 100', 16,000 square feet as compared with the 3,200 square feet enclosed by plaintiff. As defendants' evidence tends to show, they "took down" a portion of plaintiff's construction and "laid it aside."

Plaintiff's evidence tends to show that it discovered this condition when visiting the warehouse to get the leased storage space in shape for the storage of sweet potatoes in the 1953 season; that, notwithstanding notice that it wanted its leased space for this purpose for the 1953 season, use thereof by plaintiff was denied by defendants; that the space (within the larger enclosure) was actually used for the storage of sweet potatoes in the 1953 season by Godwin Produce Company, a partnership composed of E. E. Godwin and Buck Currin, one of the defendants; and that the space was used by one C. C. Barefoot in the 1954 season under lease from the then owners of the warehouse.

Plaintiff alleged damages for breach of contract in the amount of $2,000.00. It offered evidence tending to show that the fair rental value of the space leased, as enclosed by plaintiff and made suitable for the storage of sweet potatoes, was $1,000.00 or more for each of the two seasons, 1953 and 1954. There was opinion testimony to this effect and also evidence that the leased (enclosed) space was sufficient for the storage of between 11,000 and 12,000 bushels of sweet potatoes. E. E. Godwin, a witness for defendants, testified that the regular price for the storage of sweet potatoes was between 10c and 15c per bushel.

Defendants offered evidence to the effect that the fair rental value of the leased space was $112.00 per year for each of the 1953 and 1954 seasons. This figure is based on 3,200 square feet at $35.00 per thousand.

The first issue, answered by consent, related to the making of the quoted lease agreement. The jury found (second issue) that defendants breached the agreement, and (third issue) awarded damages in the amount of $2,000.00.

Judgment was entered, in plaintiff's favor, for $2,000.00 and costs. Defendants excepted and appealed, setting forth 83 assignments of error.

*Taylor, Allen & Warren for plaintiff, appellee.*

*J. Faison Thomson & Son, I. R. Williams, and Franklin Dupree for defendants, appellants.*

BOBBITT, J. The location and dimensions of the leased floor space were identified and fixed when enclosed by plaintiff in the Fall of 1950 and made available for the storage of sweet potatoes as contemplated and actually used by plaintiff for such purpose during the 1950 and 1951 seasons. True, as contended, defendants had the right to use the space for the sale of tobacco from the beginning of the season, in any year, up to October 15th. The lease so provides. But defendants had no right to dismantle plaintiff's enclosed storage space and take possession of this space for the storage of sweet potatoes. It is noted that this space was not used for the sale of tobacco.

The court excluded testimony offered by defendants tending to show that the reason plaintiff's enclosure was dismantled in the summer of 1953 was to enable defendants to have the space considered by the Tobacco Board of Trade in calculating the selling time to be allotted to defendants on the tobacco sales market. Defendants owned other tobacco warehouses. The rulings were correct. Even so, some evidence along this line was developed and received without objection. It is irrelevant. It explains why defendants dismantled plaintiff's enclosed storage space but is not a legal justification thereof.

With one minor exception, the only authorities cited in defendants' brief are in support of their assignments of error directed to the court's instructions bearing on the issue of damages. Only these assignments merit further discussion.

In the absence of a provision to the contrary, there is an implied covenant that the lessee shall have the quiet and peaceable possession of the leased premises during the term. *Sloan v. Hart,* 150 N.C. 269, 63 S.E. 1037; *Huggins v. Waters,* 154 N.C. 443, 70 S.E. 842; *Smithfield Improvement Co. v. Coley-Bardin,* 156 N.C. 255, 72 S.E. 312, 36 L.R.A. (N.S.) 907; 32 Am. Jur., Landlord and Tenant sec. 268; 51 C.J.S., Landlord and Tenant sec. 323. Unauthorized entry and repossession of the leased premises by the lessors or those acting under their

direction constitutes an invasion of the lessee's rights, in short, a breach of the lease agreement. 51 C.J.S., Landlord and Tenant sec. 319. In such case, the lessee, at his election, may sue for damages. 51 C.J.S., Landlord and Tenant sec. 320.

What then is the measure of damages when the lessors, during the term the lease is in effect, wrongfully exclude the lessee from the leased premises and deny to the lessee the possession thereof during the unexpired portion of the term?

It was held in *Sloan v. Hart, supra,* that lessee's cause of action accrues immediately upon such breach. "The measure of damages appears settled by practically all the authorities to be the difference between the rent agreed upon and the market value of the term, plus any special damages alleged and proved." "By rental value is meant, not the probable profits that might accrue to the plaintiffs, but the value, as ascertained by proof, of what the premises would rent for, or by evidence of other facts from which the fair rental value may be determined." Quotations are from opinion of *Brown, J.,* in *Sloan v. Hart, supra.* See *Sloan v. Hart,* 153 N.C. 183, 69 S.E. 50.

Plaintiff's evidence, accepted by the jury, established that plaintiff had paid the rental for the full term of five years. It is noted that the amount expended by plaintiff in the construction of the enclosure was to be credited against the rent due, which was $30.00 per thousand square feet or $96.00 per year for 3,200 square feet, a total of $480.00.

The lessee having paid the rental for the entire term of five years, the measure of damages, in the absence of allegation and proof of special damages, is the fair rental value of the leased premises as enclosed by plaintiff for the 1953 and 1954 seasons, to wit, the portion of the term that had not expired when the breach occurred. At the time of trial, the 1954 season had passed. Hence, there was no need to restrict the recovery to the present value, appropriate when any part of the unexpired term is subsequent to date of trial.

Here plaintiff did not allege nor did he undertake to prove the loss of profits or other special damages. The evidence offered, bearing upon the issue of damages, was directed solely to the fair rental value of the leased premises as enclosed by plaintiff for the 1953 and 1954 seasons. The evidence as to the amount expended by plaintiff in construction of the enclosure was directed solely to the question as to whether plaintiff, in accordance with the terms of the lease, had paid the rent for the full term of five years.

The court gave the jury the basic rule for measuring damages for breach of contract, established law since *Hadley v. Baxendale,* 9 Exch. 341. *Sloan v. Hart,* 150 N.C. 269, 63 S.E. 1037; *Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634. While not challenging the correctness of

this basic rule, defendants assign as error the court's failure to indicate its precise application to the present case. The assignment is without merit, for the conflicting evidence and the court's array of the conflicting contentions based thereon show clearly that the issue as to damages involved only a determination of what was the fair rental value of the leased premises as enclosed by plaintiff for the 1953 and 1954 seasons.

Defendants further challenge the charge because the court failed to instruct the jury that plaintiff was under the legal duty to show that it had exercised reasonable prudence and diligence to minimize its loss. It is noted that when the rule as to the duty to minimize damages applies, the party who breached the contract has the burden of showing matters in mitigation of damages. *Monger v. Lutterloh,* 195 N.C. 274, 142 S.E. 12. But apart from this, the rule has no application here.

True, such rule ordinarily applies when special damages are alleged and shown, such as gains prevented and losses incurred, on account of breach of an executory contract. *Chesson v. Container Co.,* 215 N.C. 112, 1 S.E. 2d 357; *Perkins v. Langdon, supra.* In *Monger v. Lutterloh, supra,* an entirely different situation was presented. There the lessee refused to accept the leased premises and to pay the rent therefor. The lessor took possession thereof for the benefit of the lessee. In the lessor's action against the lessee for rent, it was held that the lessor must account to the lessee, that is, give him credit against the stipulated rent, either for the fair rental value of the leased premises or for the amount the lessor could have obtained by the exercise of reasonable prudence and diligence in reletting the premises, depending upon whether the lessor did or did not make actual use of the premises for his own purposes. The cases cited in this paragraph, relied on by defendants, are readily distinguishable from this case.

After defendants had dismantled plaintiff's enclosure and sweet potatoes were stored by others in the leased space (then within a larger enclosure), there was a conversation between an officer of plaintiff (Andrews) and defendant Buck Currin in which they tried to adjust the damages to which plaintiff was entitled. This evidence was received without objection. As defendant Buck Currin put it: "We didn't get together." The jury's verdict, after consideration of conflicting evidence as to the fair rental value of the leased space for the 1953 and 1954 seasons, resolved the uncertainty as to the amount justly due and owing plaintiff on account of defendants' breach of contract.

All assignments of error brought forward in the brief, a total of 51, have been considered. Examination thereof discloses no error of law deemed of sufficient prejudicial effect to warrant a new trial.

No error.