MARINA FOOD ASSOCIATES, INC., and S. N. McKENZIE, Plaintiffs v.
MARINA RESTAURANT, INC., CONVA P. KERSEY, ENRIQUE PAULA
and ROBERT P. CORBETT, JR., and BENSON MARINE GROUP, INC.,
Defendants

No. 895SC1181

(Filed 21 August 1990)

1. **Compromise and Settlement § 6 (NCI3d) — breach of lease — offer to buy out lease — admissible**

There was no error in an action for breach of a lease agreement in admitting evidence of defendant's offer of $150,000 in January of 1986 to terminate the lease where there was no dispute concerning the repair or replacement of the roof in late January 1986 and the buy-out offer was therefore not an offer to settle or compromise a disputed claim. Moreover, the offer was evidence of the value of the lease and therefore relevant to the issue of damages. N.C.G.S. § 8C-1, Rule 402; N.C.G.S. § 8C-1, Rule 408.

**Am Jur 2d, Compromise and Settlement §§ 14, 15, 48.**

2. **Evidence § 13 (NCI3d) — breach of lease — letter from attorney to defendants and accountants — not privileged**

The court did not err in an action for breach of a lease by admitting into evidence a letter from an attorney to the individual defendants and their accountant. The letter in question was communicated to a third party and was therefore not a confidential communication protected by the attorney-client privilege.

**Am Jur 2d, Witnesses § 203.**

3. **Pleadings § 33.2 (NCI3d); Rules of Civil Procedure § 15 (NCI3d) — breach of lease — amendment of pleadings to add breach of covenant of quiet enjoyment and to clarify conversion claim — allowed**

The trial court did not err in an action for breach of a lease by allowing plaintiff to amend its pleadings to include breach of the covenant of quiet enjoyment and to clarify the claim of conversion of personal property. Plaintiff offered evidence of constructive eviction which, if found, constitutes a breach of the implied covenant of quiet enjoyment, plaintiff's claim for conversion was not objected to by defendants at

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

trial, and defendants' counsel signed and did not contest a pretrial order in which plaintiff stated that one of the issues for trial was conversion of personal property. N.C.G.S. § 1A-1, Rule 15(b).

**Am Jur 2d, Pleadings §§ 315, 322, 323, 329, 330.**

## 4. Corporations § 28 (NCI3d) — distribution of assets of corporation — liability of shareholders

The trial court did not err in an action for breach of a lease by granting partial summary judgment against individual defendants regarding liability for damages recovered against the corporate defendant where it was undisputed that the individual defendants were the only shareholders of the corporation, the assets of the corporation were assigned to them, the individual defendants were aware of the present action when they received distribution of the restaurant's assets, no assets or money were set aside for payment of any liability or claims arising from this action, and the distribution completely diminished the assets of the corporation. However, no appropriate factual determination was made to determine the extent of liability of the respective individual defendants and the case was remanded for the trial court to take evidence and make those findings.

**Am Jur 2d, Corporations § 2870.**

## 5. Landlord and Tenant § 8 (NCI3d) — replacement of roof — breach of lease — evidence sufficient

The trial court did not err in an action for breach of a lease by failing to replace the roof in a timely manner by denying defendants' motions for a directed verdict and judgment n.o.v. where plaintiff was the lessee and defendants the lessors; the lease agreement contained a statement to the effect that the lessee would keep the parking area and exterior, including the roof and outside walls, in good repair, normal wear and tear excepted; the lease agreement was prepared by defendant Marina's attorney; when it became apparent that the roof could not be repaired and had to be replaced, defendant Marina's attorney wrote to plaintiff requesting that plaintiff replace the roof; plaintiff's president met with Marina's and asserted that it was defendant Marina's obligation to replace the roof; plaintiff offered at one point to replace the roof and

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

deduct the cost from the rent; defendant Marina did not respond and did not raise the issue again; defendant Marina's attorney assured the president of plaintiff corporation in subsequent discussions that the roof would be replaced and never stated that it was not the landlord's responsibility to replace the roof; defendant Marina's attorney stated in response to repeated requests that the work had not been done due to the unavailability of the roofing company which defendants wanted to do the work; defendant Marina's attorney wrote to the individual defendants and their accountant advising them that it was his opinion that if the roof damage was normal wear and tear then it was defendants' problem to correct; the majority shareholder, officer and director of defendant corporation acknowledged in a conversation with the restaurant's manager that defendant corporation would have to replace the roof; and defendant Marina ultimately had the roof replaced.

Am Jur 2d, Landlord and Tenant §§ 774, 777, 828, 832.

6. **Landlord and Tenant § 6.2 (NCI3d) — constructive eviction — breach of implied covenant of quiet enjoyment — evidence sufficient**

The evidence was sufficient to support claims for constructive eviction and breach of the implied covenant of quiet enjoyment in an action arising from a leaking roof which ultimately had to be replaced. The landlord's breach of the lease rendered the premises unfit for plaintiff's purposes; such action constituted constructive eviction which automatically operated as a breach of the implied covenant of quiet enjoyment.

Am Jur 2d, Landlord and Tenant §§ 314-316, 333, 336.

7. **Trover and Conversion § 2 (NCI3d) — breach of lease of real property — conversion of personal property — evidence sufficient**

There was sufficient evidence of conversion of personal property in an action for breach of a real property lease where the evidence showed that in January 1986 plaintiff vacated the building due to the worsening condition of the interior of the restaurant; restaurant equipment and supplies remained in the building; representatives of plaintiff repeatedly testified that the closing was not meant to be permanent; plaintiff had exercised a five-year renewal option on the lease; plaintiff's

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

attorney received a letter from defendants stating that they were taking possession of the building after defendants closed on the sale of the building to a third party; and plaintiff's equipment and other fixtures remained in the building. Defendant Marina's actions in denying plaintiff access to its property was sufficient to support the verdict as to conversion.

**Am Jur 2d, Conversion § 28.**

8. **Landlord and Tenant § 13 (NCI3d) — breach of lease — damages — evidence sufficient**

   The evidence was sufficient to show damages in an action for breach of a lease for a restaurant where the lessor's breach resulted in constructive eviction of the tenant. The tenant's general damages in such a case are the value at the time of the eviction of the unexpired term, less any rent reserved, and recovery may also include compensatory damages for pecuniary losses proximately resulting from the eviction.

**Am Jur 2d, Landlord and Tenant §§ 183, 187, 323, 324, 326.**

9. **Trover and Conversion § 4 (NCI3d) — breach of lease — conversion of personal property — award of damages — evidence sufficient**

   There was sufficient evidence in an action for breach of a lease for a restaurant to support the jury's award of damages for conversion of plaintiff's personal property where the evidence viewed in the light most favorable to plaintiff established that the total value of all of the furniture and equipment owned by plaintiff corporation was $150,000; a videotape was made of the interior of the restaurant showing the equipment and other fixtures owned by plaintiff after defendant Marina took possession of the restaurant building; and the former manager of the restaurant testified that the value of the goods shown in the videotape was over $150,000.

**Am Jur 2d, Conversion §§ 105, 108, 135.**

10. **Landlord and Tenant § 13 (NCI3d) — breach of lease for restaurant — instructions on abandonment and surrender — no error**

    There was no error in an action for breach of a lease for a restaurant concerning the court's alleged failure to instruct the jury on the issues of abandonment and surrender where the record clearly reflects that the trial court in-

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

structed the jury on the issue of abandonment of the premises by plaintiff and the court correctly refused to instruct on surrender because it is clear that plaintiff repeatedly expressed the intent to reopen the restaurant and intended no surrender. Being forced to abandon premises due to a constructive eviction does not automatically give rise to a surrender of the premises as that term is used in the law of landlord and tenant.

**Am Jur 2d, Landlord and Tenant §§ 333, 345, 1095, 1096.**

APPEAL by defendants from judgment entered 14 June 1989 in NEW HANOVER County Superior Court by *Judge Cy A. Grant.* Heard in the Court of Appeals 3 May 1990.

The original plaintiffs in this case, Marina Food Associates, Inc. and S. N. McKenzie, brought this action to recover damages for breach of a lease agreement against defendant Marina Restaurant, Inc. Plaintiffs subsequently amended their complaint to include the individual defendants, who were the only shareholders of the corporate defendant, and Benson Marine Group, Inc., which had purchased the property in question from defendant Marina Restaurant, Inc. At the conclusion of trial, motions for directed verdicts dismissing claims asserted by plaintiff McKenzie and counterclaims of defendants as to McKenzie were granted. Plaintiffs' claims against defendant Benson Marine Group and defendant Benson Marine Group's counterclaims against plaintiffs were also dismissed without prejudice. The motion for directed verdict by defendant Marina Restaurant, Inc. and the individual defendants was denied. The jury returned verdicts in favor of Marina Food Associates (plaintiff) on the issues of breach of the lease agreement, conversion of personal property, and damages. The motion for judgment notwithstanding the verdict by defendant Marina Restaurant, Inc. and the individual defendants (defendants) was denied. Defendants appeal.

*Carr, Swails, Huffine & Crouch, by Auley M. Crouch, III; and Marshall, Williams, Gorham & Brawley, by Lonnie B. Williams, Jr., for plaintiff-appellee.*

*Burney, Burney, Barefoot & Bain, by Roy C. Bain and Mary Elizabeth Wertz, for defendant-appellants.*

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

WELLS, Judge.

We note at the outset that plaintiff has not brought forward and argued its single cross-assignment of error; it is therefore deemed abandoned pursuant to Rule 28(b)(5) of the N.C. Rules of Appellate Procedure.

The pertinent facts are as follows: In January 1981, plaintiff leased property from defendant Marina Restaurant (Marina) for the operation of a restaurant. The initial term of the lease ran from 1 January 1981 to 28 February 1982, and contained three renewal options allowing extensions of one year, three years, and five years. The lease provided for a minimum annual rent of $40,000. Shortly after plaintiff began operating the restaurant, the roof began leaking. Plaintiff was able to deal with the leaks by periodically patching the roof and making other necessary repairs, such as replacing ceiling tiles that were damaged due to the leaks. During this time plaintiff also purchased restaurant equipment and other fixtures and renovated the restaurant.

During 1984 the leaking worsened and a series of discussions began between defendant Marina and plaintiff concerning the need to replace the roof. There was initial disagreement over who was obligated to replace the leaking roof. Over the course of 1985, conditions inside the restaurant deteriorated due to damage caused by the leaks. For this reason, plaintiff closed the restaurant in January 1986. Ultimately, defendant Marina had the roof replaced in March 1986.

In October 1985, Marina listed the restaurant property for sale. Plaintiff exercised its option to extend the lease for an additional five years in December 1985. Negotiations for the purchase of the property by Benson Marine Group began in January 1986.

After replacing the roof in March 1986, defendant Marina notified plaintiff that it could reopen the restaurant. Prior to reopening, plaintiff arranged for the necessary building inspections. The results of the inspections were to the effect that the building could not be reopened until repairs were made to the restaurant's interior.

Plaintiff brought this action in October 1986. On 22 December 1986 the sale of the property to Benson Marine Group was closed. At that time, all assets of defendant Marina were assigned to the shareholders, individual defendants in this action.

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

In this appeal defendants assign as error two evidentiary rulings, rulings allowing amendment of the pleadings, the instructions to the jury, the denial of their motions for directed verdict and for judgment notwithstanding the verdict. We find no error in the trial.

[1] Defendants' first two assignments of error concern evidentiary rulings made by the trial court. Defendants first contend that it was error to admit into evidence defendants' January 1986 offer of $150,000 to plaintiff to terminate the lease. In support of this contention defendants assert that the offer should have been excluded pursuant to N.C. Gen. Stat. § 8C, Rule 408 of the N.C. Rules of Evidence, or alternatively, pursuant to G.S. § 8C, Rule 402. We find these arguments to be without merit. First, Rule 408 does not apply unless there is an existing dispute when the offer "to compromise a claim which [is] disputed" is made. *See, e.g., Wilson County Bd. of Ed. v. Lamm,* 276 N.C. 487, 173 S.E.2d 281 (1970); *Horton v. Goodman,* 68 N.C. App. 655, 315 S.E.2d 728 (1984). In the present case a series of discussions concerning the leaking roof had taken place throughout most of 1985. By the fall of 1985, defendant Marina had apparently agreed to replace the roof but wanted a specific roofing company to do the work. Plaintiff had exercised its option to renew the lease for five more years and was planning to reopen the restaurant after the roof was replaced. Consequently, in late January 1986, there was no dispute concerning the repair or replacement of the roof and the $150,000 buy-out offer was therefore not an offer to settle or compromise a disputed claim. Prior to its offer to plaintiff, defendant Marina had accepted an offer to sell the restaurant property to Benson Marine Group for $1.1 million. When plaintiff rejected defendant Marina's buy-out offer, the purchase price of the property was reduced to $925,000. Bill Benson of Benson Marine Group acknowledged that $150,000 of the reduction in price was attributable to the value of the lease. (The remaining $25,000 difference was attributable to the cost of replacing the roof.) It is clear that the buy-out offer was an effort on the part of defendant Marina to satisfy a condition of the sale of the restaurant property to Benson Marine Group and was not violative of Rule 408. Finally, the admission of the offer is also not barred by Rule 402. The offer was evidence of the value of the lease and is therefore relevant to the issue of damages in this case.

MARINA FOOD ASSOC., INC. v. MARINA RESTAURANT, INC.

[100 N.C. App. 82 (1990)]

[2] Defendants also assert that the trial court erred in admitting into evidence a letter from attorney Douglas Fox to the individual defendants and their accountant. Defendants contend that the letter was protected by the attorney-client privilege. We disagree. The attorney-client privilege extends only to confidential communications. A communication intended to be disclosed to a third party is not confidential. *See* 1 *Brandis on North Carolina Evidence* § 62 (3d ed. 1988). The letter in question was communicated to a third party and was therefore not a confidential communication protected by the attorney-client privilege. These assignments are therefore overruled.

[3] Defendants next assign error to the grant of plaintiff's motion, pursuant to N.C. Gen. Stat. § 1A-1, Rule 15 (1983) of the N.C. Rules of Civil Procedure, to amend its pleading to include breach of the implied covenant of quiet enjoyment and to clarify that the claim of conversion of personal property applied to these defendants as well as to Benson Marine Group. In order to conform the pleadings to the evidence and raise issues tried by the express or implied consent of the parties, G.S. § 1A-1, Rule 15(b) authorizes amendment of pleadings at any point in trial, even after judgment. *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 87 N.C. App. 438, 361 S.E.2d 608 (1987), *cert. dismissed*, 322 N.C. 607, 370 S.E.2d 416 (1988). The trial court's ruling on such a motion is not reviewable absent an abuse of discretion. *Id.* In the present case plaintiff offered evidence in support of constructive eviction. If found, constructive eviction as a matter of law constitutes a breach of the implied covenant of quiet enjoyment. *Dobbins v. Paul*, 71 N.C. App. 113, 321 S.E.2d 537 (1984). Furthermore, evidence in support of plaintiff's claim for conversion was not objected to by defendants at trial and defendants' counsel signed, and did not contest, a pretrial order in which plaintiff stated that one of the issues for trial was whether defendant Marina had converted personal property. These amendments did not prejudice defendants and were properly allowed.

[4] Defendants also argue that it was error to grant partial summary judgment against the individual defendants regarding liability for damages recovered against the corporate defendant in this action. We disagree. Former Chapter 55, in effect at the time of this action, provides that shareholders, as well as directors, are liable to the corporation for any unlawful amounts received by them. Unlawful amounts received by shareholders include any redemptive or purchase price or distribution from the corporation

at a time when the corporation is unable to meet its obligations in the ordinary course of business, or *"when the shareholder has knowledge that such receipt diminishes assets of the corporation"* in a manner contrary to the provisions of Chapter 55. N.C. Gen. Stat. § 55-54 (1982) (emphasis supplied). To that end, the procedures for dissolution of a corporation include the provision that a corporation adequately provide for the payment of all of its obligations before distributing assets among its shareholders. *See* N.C. Gen. Stat. § 55-119 (1982). It is undisputed that the individual defendants were the directors and only shareholders of the corporation and that on 22 December 1986 the assets of the corporation were assigned to them. The individual defendants were aware of the present action when they received distribution of the restaurant's assets. The undisputed testimony of Douglas Fox showed that no assets or sum of money had been set aside for the payment of any liability or claims arising out of this action. Obviously, the redemption or distribution completely diminished the assets of the corporation, thus subjecting the individual defendants to liability for corporate obligations. Defendant correctly points out, however, that shareholders' liability under Chapter 55 is limited to the amount received by them. *See* G.S. § 55-54.

The record before us indicates that no appropriate factual determination has been made to determine the extent of liability of the respective individual defendants. While partial summary judgment was correctly entered as to their being liable, we must remand for the trial court to take evidence and make findings as to the extent of liability of each individual defendant. When that has been accomplished, the judgment of 14 June 1989 shall be appropriately modified.

[5]   Defendants next contend that plaintiff's evidence was insufficient to support the jury's verdict that defendant Marina breached the lease agreement, converted personal property of plaintiff, and that plaintiff suffered damages as a result. A motion for directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). In ruling on a defendant's motion for directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50, the plaintiff's evidence must be taken as true and all the evidence must be taken in the light most favorable to the plaintiff. *Id.* All conflicts in the evidence must be resolved in plaintiff's favor and he is entitled to the benefit of every inference that could reasonably be drawn in his favor.

*West v. Slick*, 313 N.C. 33, 326 S.E.2d 601 (1985). Only where the evidence, when so considered, is insufficient to support a verdict in the plaintiff's favor should the defendant's motion be granted. *Id.* If there is even a scintilla of evidence to support plaintiff's prima facie case then the motion should be denied. *Burris v. Shumate*, 77 N.C. App. 209, 334 S.E.2d 514 (1985). A motion for judgment notwithstanding the verdict is essentially the renewal of a prior motion for a directed verdict, and the same rules regarding the sufficiency of the evidence to go to the jury are equally applicable. *Henderson v. Traditional Log Homes, Inc.*, 70 N.C. App. 303, 319 S.E.2d 290, *disc. rev. denied*, 312 N.C. 622, 323 S.E.2d 923 (1984).

Whether defendant Marina breached its lease agreement with plaintiff depends upon whether it had a duty to replace the roof and, if so, whether its failure to do so in a timely manner resulted in a constructive eviction.

In the absence of a lease agreement to the contrary, a landlord is under no common law obligation to repair leased premises. *See, e.g., Harrill v. Refining Co.*, 225 N.C. 421, 35 S.E.2d 240 (1945) and cases cited therein. The lease agreement at issue contained a provision regarding repairs which the court found to be ambiguous. An ambiguous clause in a lease is construed in favor of the lessee, particularly where the lease was drafted by the lessor. *See Coulter v. Finance Co.*, 266 N.C. 214, 146 S.E.2d 97 (1966) and cases cited therein. In addition, the intent of the parties, where not clear from the contract, may be inferred from their actions. *See Branch Banking and Trust Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 332 S.E.2d 186 (1985). Subsequent conduct of the parties is admissible to show their intent when the meaning of a contract is ambiguous. *See MAS Corp. v. Thompson*, 62 N.C. App. 31, 302 S.E.2d 271 (1983).

The evidence tended to show the following: The lease agreement contained a statement to the effect that the lessee "will keep the parking area and the exterior of said building including roof and outside walls in good repair, normal wear and tear excepted." The lease agreement was prepared by defendant Marina's attorney, Douglas Fox. In March 1985, when it became apparent that the roof could no longer be repaired, but instead had to be replaced, Fox wrote to S. N. McKenzie requesting that plaintiff replace the roof. Sam Poole, president of plaintiff corporation, subsequently met with Fox and asserted that it was defendant Marina's

obligation to replace the roof. At one point, plaintiff, through Poole, offered to replace the roof and deduct the cost from the rent. Defendant Marina did not respond to this overture and, after the initial request that plaintiff replace the roof, defendant did not raise the issue with plaintiff again. In subsequent discussions about replacing the roof, Fox assured Poole that the roof would be replaced and never stated that it was not the landlord's responsibility to replace the roof. In answer to repeated questions as to why work had not yet begun, Fox told Poole and McKenzie that it was due to the unavailability of the roofing company defendant wanted to do the work. In December 1985 Fox wrote to the individual defendants and their accountant advising them that it was his opinion that if the roof damage was "normal wear and tear" then it was "our problem to correct." In a conversation with the restaurant's manager, Conva P. Kersey, majority shareholder, officer and director of defendant corporation, acknowledged that defendant corporation would have to replace the roof. Ultimately, defendant Marina had the roof replaced in March 1986.

When taken in the light most favorable to the plaintiff, we hold that this was sufficient evidence to support the jury's verdict that defendant had breached its lease agreement regarding repair of the roof.

[6] Additional claims associated with breach of the lease agreement which defendants contend were not supported by the evidence include constructive eviction and breach of the implied covenant of quiet enjoyment. We disagree. An act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under his lease, causing the tenant to abandon them, amounts to a constructive eviction. 49 Am. Jur. 2d, *Landlord and Tenant*, § 576 (1970). Put another way, when a landlord breaches a duty under the lease which renders the premises untenable, such conduct constitutes constructive eviction. 1 *American Law of Property*, § 3.51 (1952 & Supp. 1962). Furthermore, a lease includes the implied covenant of quiet enjoyment. *Andrew & Knowles Produce Co. v. Currin*, 243 N.C. 131, 90 S.E.2d 228 (1955); *Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 139 S.E.2d 362 (1964). Where a lessee has been constructively evicted, the covenant of quiet enjoyment has also been breached. *Dobbins, supra.*

Based on our conclusion that the evidence of breach of the lease was sufficient to support the jury's verdict, we must reject

defendants' contentions with regard to these claims as well. The landlord's breach of the lease rendered the premise unfit for plaintiff's purposes. Such action constituted constructive eviction which automatically operated as a breach of the implied covenant of quiet enjoyment.

[7] Defendants' second asserted ground for directed verdict is that plaintiff failed to produce sufficient evidence that defendant converted the personal property of plaintiff. Conversion is the unauthorized assumption and exercise of right of ownership over goods or personal property belonging to another to the alteration of their condition or the exclusion of the owner's rights. *Spinks v. Taylor*, 303 N.C. 256, 278 S.E.2d 501 (1981). The evidence showed that in January 1986 when plaintiff vacated the building due to the worsening condition of the interior of the restaurant, restaurant equipment and supplies it had purchased remained in the building. Representatives of plaintiff repeatedly testified that the closing was not meant to be permanent but rather that it was their intent to reopen the restaurant. Plaintiff had exercised a five-year renewal option on the lease. Then, on 22 December 1986, when defendants closed the sale of the building to Benson Marine Group, plaintiff's attorney received a letter from defendants stating that they were taking possession of the building. Plaintiff's equipment and other fixtures remained in the building. The essence of conversion being wrongful deprivation of an owner's property by another, defendant Marina's actions in denying plaintiff access to its property was sufficient to support the jury's verdict as to conversion. *Id.*

[8] Defendants' final contention with regard to their motions for directed verdict and judgment notwithstanding the verdict is that the evidence was insufficient to show that plaintiff suffered damages as a result of defendant's conduct. We disagree. A breach of a lease agreement by the lessor may give rise to a claim for damages by the lessee. *See, e.g., Produce Co. v. Currin, supra.* In this case the lessor's breach resulted in constructive eviction of the tenant. It is well settled that a tenant may recover damages that proximately result from a wrongful eviction. *Burwell v. Brodie*, 134 N.C. 540, 47 S.E. 47 (1904); *Goler Metropolitan Apartments, Inc. v. Williams*, 43 N.C. App. 648, 260 S.E.2d 146 (1979), *disc. rev. denied*, 299 N.C. 328, 265 S.E.2d 395 (1980). A tenant's general damages in such a case are the value, at the time of the eviction, of the unexpired term, less any rent reserved. *See generally* 52 C.J.S., *Landlord and Tenant*, § 461(4) (1968). However, a tenant's

recovery is not limited to the value of the leasehold interest only, but may also include compensatory damages for pecuniary losses proximately resulting from the eviction, including conversion of personal property and, in the case of a business, loss of profits when such loss is ascertainable to a reasonable degree of certainty. *Id.* at § 461(1). Therefore, plaintiff's evidence as to the value of its lease was sufficient to support the jury's verdict for damages resulting from breach of the lease agreement.

[9]   Likewise, the evidence was sufficient to support the jury's award of damages for conversion of plaintiff's personal property. The measure of damages for conversion is the fair market value of the chattel at the time and place of conversion, plus interest. *Esteel Co. v. Goodman*, 82 N.C. App. 692, 348 S.E.2d 153 (1986), *disc. rev. denied*, 318 N.C. 693, 351 S.E.2d 745 (1987) (fair market value defined as price a willing buyer would pay a seller willing, but not compelled, to sell). A plaintiff must present evidence that will furnish a basis for determination of damages; however, it is not necessary to prove damages with absolute certainty. *Id.* (citations omitted). The evidence viewed in the light most favorable to plaintiff established that the total value of all of the furniture and equipment owned by the corporation was in excess of $150,000. After defendant Marina took possession of the restaurant building, a videotape was made of the interior of the restaurant showing the equipment and other fixtures owned by plaintiff. Raymond Williams, the former manager of the restaurant, testified that the value of the goods shown in the videotape was over $150,000. This evidence was sufficient to support the jury's award of damages for conversion.

Defendants also assign as error the trial court's instructions to the jury on the issues of breach of the landlord's duty to repair, breach of the covenant of quiet enjoyment, ambiguity, and conversion contending that the evidence was insufficient to warrant the instructions. Based on our review of the record we agree with the trial court's ruling as a matter of law that the language in the lease regarding repairs is ambiguous. Our affirmative resolution of the question concerning the legal sufficiency of the evidence to take the case to the jury on the remaining issues makes it unnecessary for us to address this assignment further.

[10]   Defendants next assert that the trial court erred in refusing to instruct the jury on the issues of abandonment and surrender.

We note first of all that the record clearly reflects that the trial court instructed the jury on the issue of abandonment of the premises by plaintiff. As to the court's refusal to give an instruction on the issue of surrender as it applies to the law of landlord and tenant, we find no error. Although often treated similarly by courts, the terms abandonment and surrender have essentially different meanings. 1 C.J.S. *Abandonment* § 2 (1985). Abandoning a right or thing, without regard to who, if anyone, may thereafter appropriate or possess it, is essentially different from the surrender of such right or thing to an ascertained and designated person. *Id.* The surrender of a lease requires the lessor and lessee to *mutually agree* to the termination of the term or cancellation of the lease; however, the surrender may be accomplished by act and operation of law as well as by express agreement. 51C C.J.S. *Landlord and Tenant* § 120 (1968) (emphasis added). Obviously, there was no express agreement to surrender the lease in this case. Nor do we find a surrender by operation of law as defendant contends. A surrender by operation of law is based to some extent on principles of estoppel and occurs where the parties do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made. *Id.* at § 124. Whether surrender by operation of law will be implied must depend on the facts of each particular case. *Id.* On the facts of this case, it is clear that plaintiff intended no surrender, but rather repeatedly expressed the intent to reopen the restaurant. Being forced to abandon premises due to a constructive eviction does not automatically give rise to a surrender of the premises as that term is used in the law of landlord and tenant. Refusal to submit a requested instruction is not error when instructions given fully and fairly present issues in controversy. *Tan v. Tan*, 49 N.C. App. 516, 272 S.E.2d 11 (1980), *disc. rev. denied*, 302 N.C. 402, 279 S.E.2d 356 (1981). The facts of this case do not imply a surrender by operation of law and the trial court did not err in refusing to give the instruction. This assignment of error is overruled.

For the reasons given above, we find no error in the trial, but remand for further proceedings to determine the appropriate extent of liability of each individual defendant.

No error in the trial; remanded for modification of judgment.

Judges PARKER and DUNCAN concur.